UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
Case No.___3:26-cv-1835-MGL-TER_____

| | | |
|---|---|---|
| ARTHUR SUMPTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| HENGST OF NORTH AMERICA, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

This action is brought to remedy discrimination and retaliation on the basis of disability and race and retaliation all with respect to the terms, conditions and privileges of employment. This discrimination and retaliation action is brought pursuant to violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, 12112(b), as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"), Pub. L. No. 110-325, §8; 122 Stat. 3553 (Sept. 25, 2008); and violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq. ("Title VII").

Plaintiff had been employed with Defendant as a Quality Engineer, when he was terminated without legitimate business reason and in retaliation for protected activity. As a result, Plaintiff suffered damages as set forth herein.

1.     Plaintiff is a male citizen of the United States and a resident of Florence County, South Carolina.

1

2. Defendant, Hengst of North America, Inc., "Hengst", is a corporation incorporated in South Carolina, operating in a location in Camden, SC at 29 Hengst Drive, Camden, SC 29020.

3. On February 6, 2026, the Equal Employment Opportunity Commission issued Plaintiff a notice, regarding his Discrimination Charge number 436-2026-01170, informing him of his right to sue Defendant in response to his charge of discrimination on the basis of disability, race and retaliation.

4. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under ADA and Title VII.

5. Jurisdiction of this Court is proper under Section 107(a) of the ADA, 42 U.S.C. § 12117(a) and under 42 U.S.C. §2000e-5(f)(3). This Court also has jurisdiction of this matter under federal question jurisdiction, 28 U.S.C. §§1331, civil rights jurisdiction 28 U.S.C. §§1343.

6. Pursuant to 28 U.S.C. §1391, venue is properly laid in this district because Defendant conducts substantial, systematic, and continuous activity in this district and is subject to personal jurisdiction in this district, and because all of the acts underlying this lawsuit occurred in this district.

7. Plaintiff, an African American who had a record of disability with Defendant, was employed with Defendant, Hengst, from September 3, 2024 to his termination date, September 5, 2025, most recently as a Quality Engineer.

8. Defendant was Plaintiff's employer within the meaning of 42 U.S.C. §12111 5(A) and 29 U.S.C. §2611(4).

9. Plaintiff was performing satisfactorily evidenced by a positive performance evaluation and raise in March 2025.

10. While employed, Plaintiff observed the Defendant's business practices (management, culture, and operations) and Plaintiff recalls the following incidents:

A. May 5, 2025 – Plaintiff issued a Quality Alert regarding filter being out of tolerance, warning it could fail to bond properly and cause significant engine damage. Plaintiff also raised this risk to management.

B. May 8, 2025 – Plaintiff sent a presentation to the CEO showing incorrect material usage, scrap rate exceeding 50% and risks to customers if parts were shipped defective.

C. Plaintiff's concerns were acknowledged with an email dated May 15, 2025, from the CEO congratulating the Quality Department for the good catch regarding the issues listed above.

D. On May 27, 2025, Plaintiff raised concerns about the 523 top cap erosion issue, which the manager disregarded. This led to a customer complaint at an automotive plant in Germany where Plaintiff was required to prepare an 8D report explaining how the issue occurred.

E. On July 3, 2025, Plaintiff issued another Quality Alert for 523 filters not bonding properly, which resulted in a customer complaint from Detroit Diesel Corporation (DDC), a company with US Government contracts.

11. In May 2025, Plaintiff's manager instructed Plaintiff to assign physically demanding work to an hourly associate who had recently returned from hip surgery in the

3

beginning of May 2025 and had known restrictions. Plaintiff refused to participate in the assignment and raised concerns that the assignments would conflict with documented medical restrictions and inconsistent with accommodations provided to other employees. Plaintiff informed the associate of the instruction, and reported the matter to HR and the Operations Manager.

12. On May 27, 2025, Plaintiff had a meeting with the Quality Manager in which he disclosed his medical diagnosis. He also reported that another QA Inspector was falsifying documentation.

13. After making this disclosure, on June 25, 2025, Defendant began to increase Plaintiff's workload as the manager assigned Plaintiff additional projects outside Plaintiff's normal duties.

14. The Quality Manager created a hostile work environment, when he demanded weekly meetings and denied Plaintiff's request for accommodations regarding his work load.

15. On June 25, 2025, Plaintiff made a formal complaint to HR regarding Management failure to accommodate and retaliation; and Plaintiff provided Defendant with medical records supporting his medical disability and requesting accommodation.

16. On June 26, 2025, in retaliation, the Quality Manager removed certain assignments after Plaintiff already completed them and would take credit for presentations that Plaintiff completed.

17. On August 25, 2025. Plaintiff had a performance meeting with the Quality Manager who acknowledged all Plaintiff's work was complete.

18. On September 3, 2025, Defendant terminated Plaintiff in a meeting with the Plant Manager, HR, and other management.

19. In the termination meeting, Plaintiff complained that he was being retaliated against for his complaints and for disclosing his disability. His complaint was ignored by Defendant.

20. Plaintiff is aware of Caucasian employees who were granted accommodations, were not given increased workload and who were not terminated without cause.

21. Plaintiff was held to a different employment standard than his Caucasian coworkers and/or coworkers without disabilities as Plaintiff was assigned increased workload and terminated without any history of performance issues.

22. Defendant's acts of discrimination and retaliation within Defendant's employment practices and work environment were performed with malice and reckless indifference to Plaintiff's protected civil rights.

23. Defendant's facially neutral policies and procedures were applied in a discriminatory and retaliatory manner and in a manner which had a disparate impact on Plaintiff.

24. Plaintiff was subjected to the discriminatory and retaliatory practices of his employer. As a result of the acts of discrimination and retaliation based on race and disability, Plaintiff has suffered financial and emotional distress, impaired reputation and the loss of employment opportunities with Defendant and other prospective employers.

25. Compensatory and punitive damages are both sought pursuant to Civil Rights Act of 1991 (42 U.S.C. § 1981a).

26. Furthermore, Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act and other appropriate attorney fees statutes authorized by law such as Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(k)) and 28 U.S.C. §2412(b).

## COUNT I
## (TITLE VII – RACE DISCRIMINATION)

27. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

28. Plaintiff, an African American, was performing satisfactorily before during and after he disclosed his medical condition and requested an accommodation and refused to participate in disability discrimination against another employee.

29. Plaintiff's safety and risk concerns were disregarded by management.

30. Plaintiff's complaints of discrimination and retaliation were disregarded by Defendant.

31. Defendant treated Caucasian employees in a manner better than Plaintiff, as two (2) Caucasian quality engineers were given accommodations for their disabilities with flexible work schedules.

32. Defendant, through administration refused to protect Plaintiff from unequal treatment and hostile work environment. Defendant refused to properly review Plaintiff's grievances, and allowed Plaintiff to be wrongfully terminated.

33. Defendant did not arbitrarily terminate Caucasian employees or subject them to increased workload or other retaliation to complaints.

34. The foregoing actions of Defendant and its representatives discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

35. Plaintiff has suffered injury, including immediate and irreparable injury as described in the statement of facts, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.

## SECOND CAUSE OF ACTION
## (ADA DISCRIMINATION and RETALIATION)

36. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 35 of this Complaint.

37. Plaintiff, who had a record of disability with Defendant, was performing satisfactorily before during and after he disclosed his medical condition and requested an accommodation and refused to participate in disability discrimination against another employee and made complaints to HR and Operations manager.

38. Immediately after disclosing his disability to Defendant, Plaintiff was given increased work load and was subjected to a hostile work environment.

39. Plaintiff complained to HR of disability discrimination and retaliation. And, Plaintiff was terminated immediately after making formal complaints.

40. Defendant Management and HR were both placed on notice of Plaintiff's medical disability and request for accommodation. Defendant failed to accommodate Plaintiff.

41. Defendant subjected Plaintiff to adverse employment actions immediately after Plaintiff's engaging in protected activity of opposing discrimination, requesting an accommodation, complaining of failure to accommodate and retaliation.

42. Defendant's reason for termination was pretext as Plaintiff had positive performance reviews, a raise and no history of documented disciplinary issues.

43. Defendant did not treat similarly situated employees without disabilities in the same manner as Plaintiff was treated.

44. Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his disability and in retaliation for protected activity in violation of the Americans with Disabilities Act; and the unlawful employment practices were willful and Defendant knew or should have known the effect of its unlawful business practices.

45. As a result of the acts of disability discrimination and retaliation, Plaintiff has suffered financial and emotional distress, impaired reputation and the loss of employment opportunities. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary and liquidated damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
### (WRONGFUL TERMINATION)

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 of this Complaint.

47. Plaintiff was an employee of Defendant and his employment was governed by employment agreements, actual or implied, as well as an employee handbook.

48. Defendant owed Plaintiff an implied and/or contractual duty of good faith and fair dealing, which Defendant, through its alter ego Quality Manager, breached.

49. Over the course of Plaintiff's employment, Plaintiff prepared Quality Alerts and identified incorrect material usage, erosion and other quality concerns that directly affected the consumer products.

50. Defendant was aware through Plaintiff's alerts that Defendant's products were not fit for use and Defendant would disregard Plaintiff's complaints and concerns although being on notice of the level of quality of products distributed to the public consumers, to include DDC a company with government contracts.

51. Defendant's retaliation against Plaintiff with increased work tasks and termination without cause was a wrongful termination, as Public Policy favors employees who oppose illegal activity such as fraudulent misrepresentations as to the quality of the products produced to consumers.

52. Defendant's termination of Plaintiff was a direct result of Plaintiff's identification and alerts of compromised quality and risks and amounts to wrongful termination.

53. As a result of the acts of Defendant's wrongful termination, Plaintiff has suffered financial and emotional distress, impaired reputation and the loss of employment opportunities. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary and liquidated damages as a result of Defendant's conduct unless and until this Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a judgment:

A.  Declaring that the acts and practices complained of are in violation of ADA and Title VII;

B.  Enjoining and permanently restraining these violations of law;

C.  Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and retaliatory treatment of him, and make him whole for all earnings he would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, pension and other lost benefits;

D.  Awarding Plaintiff costs of this action together with reasonable attorney's fees as provided by applicable statutes;

E.  Directing Defendant to pay Plaintiff compensatory damages and damages for his emotional distress, mental anguish and humiliation; and other compensatory and punitive damages allowable under Civil Rights Act of 1991 (42 U.S.C. § 1981a), in the amount to be determined by a jury; and,

F.  Awarding Plaintiff such other and further relief as this Court deems just and proper.

WUKELA LAW FIRM

By: ___s/ Pheobe A. Clark_____
**Pheobe A. Clark**
Federal ID No.  9888
Post Office Box 13057
Florence, SC   29504-3057
Phone:  (843) 669-5634
May 5, 2026                                         Fax:     (843) 669-5150